LESSER-GOLDMAN COTTON COMPANY *v.* ADAMS.

Opinion delivered March 26, 1923.

1. BOUNDARIES—EVIDENCE.—In a suit by a vendor of land against a purchaser from his vendee to enjoin him from attaching a building to vendor's wall, in which there was testimony that the wall projected over the boundary between plaintiff and defendant, evidence *held* not to show that plaintiff sold the land on which defendant was erecting a building according to its physical boundaries, of which the wall in question was a part.

2. EVIDENCE—PAROL EVIDENCE TO EXPLAIN DEED.—In a suit by a vendor against a purchaser from his vendee to enjoin defendant from attaching a building to plaintiff's wall, where a deed to defendant described the land by designating lots and parts of lots, giving the exact measurements of land conveyed in feet, there was no such ambiguity or uncertainty in the deed as rendered admissible oral testimony which tended to prove that the land was sold to defendants in gross as determined by physical boundaries, rather than by the number of feet.

3. BOUNDARIES—EVIDENCE.—In a suit by a vendor of land against one who purchased from his vendee to enjoin defendant from attaching a building to plaintiff's wall, where plaintiff had conveyed to its vendee a tract described as 100 by 75 feet and by lot numbers, evidence *held* not sufficient to show that there were 75 feet between the west boundary and plaintiff's wall, claimed to be the east boundary, so as to defeat a defense that the wall in question was partly on land conveyed by plaintiff.

4. PLEADING—REFUSAL TO ALLOW AMENDMENT DURING ARGUMENT.—In a suit by a vendor against a purchaser from his vendee to enjoin the latter from attaching a building to plaintiff's wall, when the sole issue presented at the hearing was whether plaintiff's building projected on defendant's land, it was not error to refuse to allow plaintiff to amend his complaint during argument so as to ask a reformation of deeds in the event the court found against it on other points.

5. INJUNCTION—RELIEF TO DEFENDANT.—In a suit by a vendor against a purchaser from his vendee to enjoin him from attaching a building on land conveyed by plaintiff to his wall, where plaintiff's wall projected over the boundary of the land conveyed, a decree permitting defendant to join the building to the wall was correct, since to refuse that right would be to deny to defendant the right to use his own property.

6. INJUNCTION—DAMAGES FOR WRONGFUL INJUNCTION.—In a suit by a vendor against one who purchased from his vendee to enjoin defendant from attaching a building to his wall, where the testimony showed damages amounting at least to $150 to defendant for the wrongful issuance of an injunction, award of that amount in a decree for defendant was proper, under Crawford & Moses' Dig., §§ 5806, 5822.

Appeal from Clark Chancery Court; *James D. Shaver*, Chancellor; affirmed.

*Joe Hardage* and *R. W. Huie, Jr.*, for appellant.

Trial court erred in dismissing complaint for want of equity and assessing damages to defendant. Appellees admitted they bought the vacant lot and were told their deed conveyed no interest in west wall of appellant's building, and line was so fixed by agreement. *Diggs* v. *Kuntz*, 132 Mo. 250; 53 A. S. R. 488. The Anderson fence was the boundary line, by agreement. 9 C. J. 235; 96 Ark. 168; *O'Neill* v. *Ross*, 100 Ark. 555; *Butler* v. *Hines*, 101 Ark. 409. Where one buys land with knowledge of a physical encroachment upon it, he is not allowed to complain about it. *Kahn* v. *Cherry*, 131 Ark. 49; *Skinner* v. *Stone*, 144 Ark. 353; *Suter* v. *Mason*, 147 Ark. 505. The court should have permitted amendment asking reformation of deeds to conform to proof.

*McMillan & McMillan*, for appellees.

The case was tried by appellant solely on the theory that its building was on the east 25 feet of lot 10, and not until its closing argument did its attorneys raise the point of physical boundaries and reformation of the deed. Description of land conveyed was accurately described by specified number of feet. *Cox* v. *Fisher*, 146 Ark. 223. There is no uncertainty of description, and parol evidence not admissible to contradict or vary

language of deed. *Dorr* v. *School Dist.,* 40 Ark. 237; *Abbott* v. *Parker,* 103 Ark. 425; *Jenkins* v. *Ellis,* 111 Ark. 222. Appellant's wall was on appellees' land and they had the right to use it. *Trulock* v. *Parse,* 83 Ark. 152; note *Dunscomb* v. *Randolph* (Tenn.) 89 Am. St. Rep. 927, 939. Damages were rightfully assessed. Secs. 5806, 5322, C. & M. Digest.

WOOD, J. This action was instituted by the appellant against the appellees. The appellant alleged that it is the owner of the east twenty-five feet of lot 10 in block 23 of Browning's survey of the city of Arkadelphia, Arkansas, on which is located a two-story brick building; that the appellees are engaged in the erection of a brick building on the west part of said lot, and have wrongfully trespassed on appellant's building by morticing holes in the wall and inserting therein ceiling joists, and attaching their building to the appellant's building; that the appellees were further encroaching on the appellant's property by making further connections to appellant's building. The appellant alleged that the west wall is wholly the property of appellant, and that the appellees had no right to join thereto. The appellant prayed that the appellees be enjoined.

The appellees in their answer denied that the appellant was the owner of the property mentioned. They admitted that they were erecting a brick building, but denied that they had wrongfully joined to appellant's building, and denied that the wall was on appellant's land, and stated that the wall to which they were joining was on the appellee's land; that they were the owners of the wall, and had a perfect right to join to the same. The deed under which the appellees claimed title describes the land as follows: "E½ of lot 8 and all of lot 9 and 15 feet off the west side of lot 10, measuring 75 feet east and west, 100 feet north and south, located in block 23 of Browning's survey to Arkadelphia, Arkansas." This description was according to a survey made by one Cutler, who testified as a witness for the

appellant.   The land was sold by the appellant under this description to the Arkadelphia Overland Company, and by that company in turn to the appellees.   The surveyor details the method he used in making the survey in order to get the legal numbers, as above mentioned, to put in the deed, and he made a plat and marked on the same the legal description of the property, which was inserted in the deed.   He stated that the brick building of appellant, at the time he made survey in 1919, was on the east 25 feet of lot 10, and he began his survey at the southwest corner of appellant's building and ran west 75 feet, thence north 100 feet, thence east 75 feet to the northeast corner of the Lesser-Goldman building, and the description in the deed to the Arkadelphia Overland Company was prepared from the survey and plat just made, which is the same description as that in the deed from the Overland Company to the appellees.

One Tennyson, who was manager of the Overland Company in 1919, and who negotiated the deal for the Overland Company in the purchase of the property from appellant, stated that he saw the survey, and that the Overland Company bought 75 feet west of the Lesser-Goldman building.   "It was understood, when we purchased the property," says the witness, "that we would not have any interest in the west wall of the Lesser-Gold-man Cotton Company's building."   The Overland Company afterwards sold this vacant property to the appellees.   This witness further stated that he had a conversation with Mr. Nowlin, one of the appellees, before he bought the property, and Nowlin asked witness if the Overland Company owned any portion of the wall, and he told Nowlin that it did not.   Witness at that time had written to the appellant to see what it wanted for a half interest in the wall.   Witness told Nowlin that the Overland Company owned 75 feet west of the building. On cross-examination witness stated that the Overland Company received a warranty deed from the appellant for the land bought by it from appellant, and made a

warranty deed to the appellees, conveying the land that is set out in that deed. On redirect examination he stated that it was not the intention of the Overland Company to convey any property other than the vacant property lying west of the wall, and, if the deed described or called for any other property, it was not the intention of the Overland Company to sell it.

Wilson, who represented the Lesser-Goldman Company in the sale of the property to the Overland Company, corroborated the testimony of the surveyor to the effect that the survey was made for the purpose of getting a legal description of the vacant property so that it could be put in the deed. He states also that he sold the property to the appellees for the Overland Company. It was referred to at the time of the deal as the vacant property of the appellant. Neither of the appellees asked witness if the property carried any interest in the wall, and witness did not represent to them that it carried any interest.

Another witness, by the name of Turguette, also corroborated the testimony of the other witnesses as to the manner in which Cutler made the survey, and to the effect that there were full 75 feet between the west wall of the Lesser-Goldman building and Anderson's fence, which constituted the western boundary of the vacant property which the appellees purchased from the Overland Company, and which that company purchased from the appellant. Correspondence was introduced between Anderson and the representative of the Overland Company, as the result of which Anderson moved his fence back to the line established by Cutler at the time of the purchase by the Overland Company of the vacant property from the appellant. After the appellees made their purchase and started to erect their brick building, they employed J. R. Haygood, a civil engineer and surveyor, assisted by F. A. Gerig, another civil engineer and surveyor, to survey the property described in their deed from the Overland Company. These surveyors testified,

giving the method used by them in making the survey. They ascertained that the brick building of appellant then on the ground would be three inches too far west of the east line of the appellees' property, described in the deed, on the front or south end of that building, and fifteen inches too far west at the north end of the building. A map or plat made by these surveyors was introduced as evidence.

The contractor who built the brick building for the appellees testified that he lined the street in front of the brick building of appellant and squared the building, and that it lacked twelve inches of being square, and if the southwest corner of the building is on the line, the northwest corner is twelve inches too far west, and is on the property of the appellees. It begins to get on their property as soon as you leave the southwest corner and gradually gets more over the line until the northwest corner is reached, at which point it is twelve inches over the line. This would put the Lesser-Goldman building at the northwest corner two feet over the line, counting twelve inches for the foundation, and the fact that the building was twelve inches too far over west. Witness put the ceiling joists into the building, and had to build a frame wall after the injunction was issued. In the event the injunction was wrongfully issued, it would cost not less than $150, including the tile flooring, to connect up with the brick wall of appellant. There was testimony of another witness, corroborating the testimony of these witnesses, to the effect that the Lesser-Goldman building at the south end was three inches too far west and at the north end twelve inches over, which, at the northwest corner, would put this building two feet and three inches on the defendant's property at that end.

The appellees testified to the effect that they purchased the land according to the description thereof as contained in their deed. Their deed calls for 75 feet front, but they did not get that much. When they went

to build, they found that the Lesser-Goldman wall was on their property four inches too far west, as shown by the surveys made by the surveyors employed by them to make the survey at the time they went to build, and the measurements made by the contractor.

Nowlin, who negotiated the trade for the appellees with the Overland Company, stated that the deed described the property which they bought, and that he did not know that the Lesser-Goldman building was on their property until it was discovered by the surveyor and measurements as above indicated. Nowlin testified that he did not agree with Tennyson or Wilson, who negotiated for the Overland Company, or any other person, as to where the lines were. He did not know where the lines were when he bought it. He asked Tennyson how much property he had there, and Tennyson told him that he had 75x100 feet, and told him that was what the deed called for. He bought what they represented to him to be 75 feet of property, and did not know where the lines were, and did not agree with them beforehand upon what the lines were. He thought he was buying 75x100 feet, and supposed that it lay between him and the Lesser-Goldman building. On cross-examination he stated that he asked Tennyson if he owned any interest in the wall, and Tennyson stated that he did not have any interest in the wall. Nowlin thought, when he bought the property, that the Overland Company had 75x100 feet, and that the Lesser-Goldman building was on the Lesser-Goldman property.

The appellant introduced in rebuttal witness Cutler, who testified that, in his first survey, he measured the whole block 23 and found that there were 200 full feet, and took the east line of the block and ran his west line north and south parallel with the east wall of the Lesser-Goldman building, and set off the 75x100 feet in this way. In his last survey he shows how, by taking different measurements, he found that there was more land in the original Browning's survey than the plat of such survey

called for, and that none of the streets or blocks west of Sixth Street was actually laid out and used according to the original plat. By taking the east line of Sixth Street as supposed to be correct, and by using the pro-rated measure, and by assuming that it was correct, the southwest corner of the Lesser-Goldman building would be about on the line and the northwest corner would be 55/100 of a foot further west. He shows that by squaring the Lesser-Goldman building parallel with the east line of Sixth Street made a difference between his last and his first survey outside of the pro-rated measure. His last survey shows that the Lesser-Goldman building was partly on the property of the appellees.

Appellant also introduced one Kauffman, who built the Lesser-Goldman building. He testified that he did not remember when he constructed it. It was built according to the line as given him, and at right angles to the street, and perfectly square, as near as it could be made, and as much so as any of the other buildings he put up. On cross-examination this witness said, "Of course, if the west wall was over the line, the defendants (appellees) could not build the wall where there was one already."

Upon substantially the above testimony the court found that the appellees were the owners of fifteen feet off of the west side of lot 10, block 23, of Browning's survey, and that the appellant was the owner of the east twenty-five feet of said lot 10; that the west wall of appellant's building extended over on that part of lot 10 owned by the appellees, so that it prevents the free use of their lot by the appellees and prevents them from erecting a wall on the edge of their lot. The court further found that the defendants (appellees) had a right to join to appellant's west wall, and that the injunction was wrongfully issued, by reason of which the appellees had been damaged in the sum of $150. The decree further contains this recital: "The court further finds that the attorneys for the plaintiff, while arguing the case,

asked that, if the court should find the property over the line, that, by way of alternative relief, the pleadings be considered as amended asking for reformation of the deeds to conform to the proof." The court denied this request. From the decree dismissing the complaint for want of equity and awarding the appellees damages in the sum of $150 is this appeal.

1. The appellant contends that the appellees admitted that they thought they were buying the vacant property, and were told that the deed to them conveyed no interest in the west wall of the Lesser-Goldman building, and that by accepting the deed they agreed that the physical boundaries surrounding the property constituted a true line, and were now estopped from contending otherwise. But it will be seen, from the testimony set out above, that there is a decided conflict in the evidence as to whether the appellees purchased the property according to the physical boundaries. The appellee, Nowlin, who negotiated the deal for the appellees, categorically denied that he ever agreed with the agents who conducted the negotiations for the Overland Company as to where the lines were. On the contrary, he testified positively that he did not know where the lines were, and did not know that the Lesser-Goldman building, or part of it, was on the property that he was buying. He stated that the agent of the Overland Company who sold him the property stated that that company had 75x100 feet.

The testimony of appellant's own witnesses shows that the property was sold to the appellees according to a plat that was made by Cutler, the surveyor. He made the survey for the purpose of ascertaining the legal description of the property that was to be sold, and it was described in the deed, according to the plat that he made, in language that would not have been used if the property had been sold by physical boundaries, but by description which expressly conveys the lots and parts of lots by feet. Therefore, even if it were proper to consider the oral testimony, we conclude that the prepon-

derance of the evidence does not show that the property was sold according to physical boundaries. Rather to the contrary. But the court, after the introduction of the deed in controversy under which the appellees obtained title, might have very properly refused to consider the oral testimony, which tended to prove that the land in controversy was sold to the appellees in gross, as determined by physical boundaries, rather than by number of feet. There is absolutely no ambiguity or uncertainty in the deed from the Overland Company to the appellees. It describes the lots and parts of lots, giving the exact measurements of the land conveyed by the deed in feet. *Dorr* v. *School Dist.*, 40 Ark. 237; *Abbott* v. *Parker,* 103 Ark. 425; *Jenkins* v. *Ellis,* 111 Ark. 222; There is nothing in the testimony to justify a finding that the appellees are estopped by their conduct from claiming the property as it is described in their deed.

2. The appellant contends that the west boundary line of the vacant property had become fixed by agreement between the adjoining former owners, grantors of the appellees, and that the evidence is undisputed that there was a full 75 feet between the Anderson fence, the west boundary line, and the west wall of the Lesser-Goldman building. We cannot agree with appellant in this contention. As we have already seen, the effect of the testimony of Nowlin, who negotiated the deal for the appellees, was that he did not buy any of the property according to physical boundaries, but he bought the property as it is described in the deed, and according to the survey and plat made by Cutler. But, if it be conceded that the Anderson fence, mentioned in the testimony, was the west line of the appellant's property, still, according to the last survey made by Cutler, there would not be 75 feet between the Anderson fence and the Lesser-Goldman building. For Cutler says if you begin at the southwest corner of the west wall of the Lesser-Goldman building and run west 75 feet, thence north 100 feet, thence east 75 feet, you would come in contact with the·

west wall of the Lesser-Goldman building before you got 75 feet—you would hit the west wall of the Lesser-Goldman building at 74½ feet. Cutler at first testified that the Lesser-Goldman building, according to his survey, was on the east twenty-five feet of lot 10, and the witnesses for appellant who swore that it was 75x100 feet between the Lesser-Goldman building and Anderson's fence based this testimony on the assumption that the first survey made by Cutler was correct, and that the Lesser-Goldman building was on the east 25 feet of lot 10. But the testimony of Cutler himself shows that, according to his last survey, he was mistaken in saying that the Lesser-Goldman building was on the east 25 feet of lot 10, and that his first survey was therefore incorrect, and that, according to his last survey, the northwest corner of the west wall of the Lesser-Goldman building is on the property of Nowlin and Adams about six inches, and the entire west wall for three-fourths of the distance is over the line and on the property of the appellees.

3. In the last place, appellant contends that, under the prayer for general relief, the appellant was entitled to have its pleadings considered as amended so as to grant appellant reformation of the deeds, in the event the court found against it on the other points. The pleadings and testimony show that the sole issue in the case, as the same was presented to the court at the hearing, was whether or not the building of appellant was on the east 25 feet of lot 10 in block 23, Browning's survey. The recitals of the decree show that the court found that the appellant did not raise the issue that, if its property were over the line, it was entitled to alternative relief by way of reformation of deeds. The court did not err in refusing to allow the appellant to amend its pleadings and to ask for reformation of the deeds, and thus to introduce a new issue at that juncture of the trial. The request of the appellant came too late, and the court ruled correctly in disposing of the case according to the plead-

ings and the testimony adduced to sustain the issue thus presented.

4. The court ruled correctly in decreeing that the appellees had a right to join to the west wall of appellant's building. "This is upon the ground that to permit the appellant's building to remain without allowing appellees the right to use the projecting wall would be to deny the appellees the free use of their property. Because the testimony shows that appellant's wall projects over on the appellees' lot, and appellees cannot use their lot without removing the projection. Therefore, to deny the appellees the right to join to appellant's west wall would be tantamount to refusing them the right to use their own property." *Trulock* v. *Parse,* 83 Ark. 152. See also note to *Dunscomb* v. *Randolph,* 89 Am. St. Rep. pp. 915, 927, 939.

The testimony shows that, by reason of the wrongful issuance of the injunction, the appellees were damaged in at least the sum of $150, which the court awarded in its decree. This award was correct. Secs. 5806-5822, Crawford & Moses' Digest. The decree is in all things correct, and it is therefore affirmed.